STEPHANIE M. HINDS (CABN 154284)
Acting United States Attorney

HALLIE HOFFMAN (CABN 210020)
Chief, Criminal Division

LLOYD FARNHAM (CABN 202231)
Assistant United States Attorney

    150 Almaden Boulevard, Suite 900
    San Jose, California 95113
    Telephone: (408) 535-7200
    FAX: (408) 535-7234
    Lloyd.Farnham @ usdoj.gov

Attorneys for United States of America

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) CASE NO. 19-CR-00111 LHK |
| Plaintiff, | ) |
| | ) UNITED STATES' SENTENCING |
| v. | ) MEMORANDUM |
| | ) |
| JIANYUN "TONY" YE, | ) |
| | ) Hearing Date: November 17, 2021, 9:15 a.m. |
| Defendant. | ) |

# INTRODUCTION

The United States respectfully submits this Sentencing Memorandum in advance of the sentencing hearing, pursuant to Federal Rules of Criminal Procedure 32 and Criminal Local Rule 32-5.

Defendant Jianyun Tony Ye has admitted to conduct underlying two criminal charges set forth in a superseding information, conspiracy to defraud the U.S. Citizenship and Immigration Service, and obstruction of justice. The conduct relates to Ye's role in obtaining and managing investor funds raised under the EB-5 visa program administered by the USCIS, a program that encourages foreign investment in the United States.

The government agrees with the Probation Office application of the criminal conduct in this case to the Sentencing Guidelines. The crimes committed by Ye are serious and involve (1) undermining the integrity of the USCIS administration of this important immigration program, and (2) undermining the ability of government agencies, including the SEC and the FBI, to investigate potential financial crimes. For this reason, the government recommends a sentence in line with the applicable guidelines range in this case.

# SUMMARY OF THE OFFENSE CONDUCT

## A.      Chen and Ye Controlled a Regional Center and Related Commercial Enterprises

Defendant Ye was the office manager at the Law Offices of Jean D. Chen, the law practice run by his wife at the time, Jean Chen. PSR, ¶ 11. Among other clients, the firm represented foreign nationals seeking to apply for conditional visas allowing them to live and work in the United States through the EB-5 program. Id. The EB-5 program allows foreign nationals who invest at least $500,000 in a qualifying new business enterprise in the U.S. to be eligible to obtain a conditional green card. Some prospective investors who worked with Chen and the firm were directed to projects affiliated with an approved regional center, Golden State Regional Center. PSR, ¶ 15. EB-5 investments are often directed to regional centers that have been reviewed by the U.S. Citizenship and Immigration Service ("USCIS"), and approved regional centers offer investors special benefits regarding their eligibility to receive a permanent green card.

Golden State Regional Center managed two projects that were the new commercial enterprises to which foreign investor money was directed, Bay Area Investment Fund I and Bay Area Investment Fund

II. PSR, ¶ 16.  Nearly all of the investors in these two EB-5 new commercial enterprises were clients of Chen's law firm.  Id.  Both new commercial enterprises were nominally owned and controlled by Golden State Regional Center.

According to corporate records and public filings, during the relevant time period, an individual identified in the Presentence Report, with initials K.R., was the sole owner and manager of Golden State Regional Center.  PSR, ¶ 13.  In fact, both Ye and Chen controlled the entities that accepted foreign investor capital purportedly for the investment into the new commercial enterprises.  PSR, ¶ 27.  Chen and Ye were the sole signatories on the bank accounts for all three entities, Golden State Regional Center, Bay Area Investment Fund I, and Bay Area Investment Fund II.  Id.

Another individual identified in the Presentence Report, with initials B. L., also operated an EB-5 regional center, and worked with Chen to send investors to Golden State Regional Center and the associated new commercial enterprises.  PSR, ¶ 15.  In addition to the investment capital of $500,000, foreign investors also paid an administrative fee to B.L. Id.  B.L. would disperse those fees at Chen's direction.

**B.      Chen and Ye Submit EB-5 Applications with False Representations to USCIS**

Between December 2014 and October 2015, the law firm Law Offices of Jean D. Chen prepared and submitted applications to USCIS on behalf of 10 foreign investors.  PSR, ¶ 26. These applications, called I-526 petitions, must be submitted for each investor seeking a visa under the EB-5 program, and the petitions included information related to the investment, including the new commercial enterprise business plan, the investment offering documents, and information about the attorney representing the investor in connection with the application.   Jean Chen was identified as the attorney for the respective investor on each petition; Ye assisted with the preparation of the petitions and supporting documents.

Each I-526 petition included a subscription agreement related to the investment that stated that K.R. controlled Golden State Regional Center and its operations.  PSR, ¶ 26. The petitions did not disclose that Chen or Ye played a significant role in running and operating the regional center.  Id.

In fact, Chen and Ye controlled Golden State Regional Center, and the underlying new commercial enterprises.  Chen and Ye were the sole signatories on the bank accounts for all these entities, and therefore behind the purported ownership by K.R., Chen and Ye controlled the assets and

influenced the operation of the entities.  PSR, ¶ 27.

### C. During an Investigation Chen and Ye Participate in the Destruction of Evidence

The Securities and Exchange Commission began an investigation regarding Ye, Chen, Golden State Regional Center, and other individuals in about May 2015. PSR, ¶ 17. By at least June 2016, Ye was aware that the SEC investigation related in part to the law firm he managed, and the payments of referral fees to Chen and Ye.  PSR, ¶ 28.

Individual B.L, who has assisted in bringing foreign investors to Golden State Regional Center, had emails that were sent between B.L., Chen, and foreign investors and that were relevant to the SEC investigation of the law firm and the regional center.  PSR, ¶ 28.  In early 2018, Chen asked B.L. to delete email relevant to the investigation.  Id.  Then, in about April 2018, Chen, Ye, and B.L. met with B.L. and instructed B.L. to delete emails she had.  Id.

At one point during the meeting, according to statements made by B.L. to the FBI, Ye and Chen sat on each side of B.L. and that Ye deleted emails on B.L.'s tablet.  PSR, ¶ 29.  Then Ye used a laptop computer, with the password to the email account provided by B.L., to delete additional emails. According to B.L, the meeting—during which Chen and Ye both instructed her to delete emails, and actually deleted emails themselves—lasted about four hours.  Id.

On October 18, 2018, the SEC filed a civil enforcement action against Ye, Chen, and other individuals, alleging that Chen and Ye defrauded EB-5 investors by, in part, failing to disclose commissions they paid themselves and covertly controlling Golden State Regional Center.  PSR, ¶ 17. The day after the SEC civil complaint was filed, on October 19, 2018, Chen left the U.S for Vancouver, Canada.  Ye was arrested on a criminal complaint on November 19, 2018, one day before he was scheduled to travel to Vancouver, Canada by plane.  Ye was later charged by indictment on March 7, 2019.  Though named in the criminal indictment filed on March 7, 2019, Chen remains a fugitive.

### RELEVANT TERMS OF THE PLEA AGREEMENT

On May 25, 2021, defendant Ye entered a guilty plea to Counts 1 and 2 of a Superseding Information charging conspiracy to defraud the United States, in violation of 18 U.S.C. § 371, and obstruction of justice, in violation of 18 U.S.C. § 1512(b)(3).  The plea agreement was entered and submitted to the Court pursuant to Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure. The

parties agreed to certain aspects of the offense level calculations for each charge but did not agree on an overall total offense level.  The defendant reserved the right to argue for a variance of any amount from the applicable guidelines, and the government agreed to recommend a sentence at the low end of the range associated with the sentencing guidelines calculation.

The agreement contains standard provisions waiving rights to appeal and file collateral attacks.

## ARGUMENT

## II.   SENTENCING GUIDELINES

The government agrees with the offense level calculations in the U.S. Probation Office's Presentence Report.  The two counts at issue, conspiracy to commit a violation of 18 U.S.C. § 1512 (Count 1) and obstruction of justice (Count 2) are appropriated grouped under U.S.C. § 3D(1.2)(c).  At the request of the government, the PSR includes the calculation for each of the charges; though only the highest resulting offense level of the group is used, both calculations result in an adjusted offense level of 16.  After the 3-point reduction for Ye's acceptance of responsibility, the applicable Total Offense Level is 13.

Because Ye has no criminal history points, the applicable guidelines sentence range is 12 to 18 months, a sentence in Zone C of the guidelines Offense Table.

## III.   SENTENCING CONSIDERATIONS

The overarching goal of a sentencing court is to impose a sentence that is sufficient to "reflect the seriousness of the offense, promote respect for the law, and provide just punishment; to afford adequate deterrence; to protect the public; and to provide the defendant with needed education or vocational training, medical care, or other correctional treatment." *United States v. Ressam*, 679 F.3d 1069, 1088-89 (9th Cir. 2012) (en banc); 18 U.S.C. § 3553(a)(2).  The Court should begin the sentencing process by correctly calculating the applicable guidelines range and must "remain cognizant of them throughout the sentencing process." *Gall v. United States*, 552 U.S. 38, 50 n.6 (2007).  The Court should then consider the factors outlined in 18 U.S.C. § 3553(a) to determine the appropriate sentence. *Ressam*, 679 F.3d at 1089.  If the Court determines that a sentence outside of the guidelines range is warranted, it must ensure that the ''justification is sufficiently compelling to support the degree of the variance." Id (internal quotation omitted). "[A] major departure should be supported by a more

significant justification than a minor one." *Gall*, 552 U.S. at 50.

The factors the Court should consider in determining the appropriate sentence include:

- The nature and circumstances of the offense, and the history and characteristics of the defendant;

- The need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; and to protect the public from further crimes of the defendant;

- The kinds of sentence and the sentencing range established in the Guidelines;

- The need to avoid unwarranted disparities among defendants with similar records who have been found guilty of similar conduct; and

- The need to provide restitution to any victims.

18 U.S.C. § 3553(a).

### A.    The Nature of the Defendant's Offense

Defendant Tony Ye's crimes stem, as so many financial crimes do, from greed. He and his former spouse Jean Chen sought legitimate profit from their involvement in the EB-5 program. But they also sought illegitimate profits, extra money that came from being involved in multiple aspects of the EB-5 investment process. They worked with individuals to solicit foreign investors and appeared to benefit from the administrative fees paid by the investors—the SEC action alleges that this was a sort of undisclosed commission on the sale of the investments. Jean Chen, and her law firm where Ye was the office manager, represented the foreign investors in preparing and submitting the immigration applications to USCIS, and Chen was paid legal fees. And Chen and Ye appeared to control the regional center and the underlying new commercial enterprise where the investor funds flowed.

This situation created unresolvable conflicts of interest, among other issues. But most significantly for the case against Ye, it also required Chen and Ye to conspire to present false information in connection with at least 10 of the petitions that they submitted to USCIS. In those I-526 petitions, Chen and Ye misrepresented their control over Golden State Regional Center and the Bay Area Investment Fund entities.

In 2018, both Ye and Chen were confronted with the possibility that their fraud would be discovered. The SEC investigation was in progress, and the entities and various individuals associated

with Chen and Ye had received administrative subpoenas. Chen, with Ye's active participation, then doubled down on the fraud, and undertook a campaign to destroy evidence that would presumably implicate them in fraud and mismanagement in connection with the regional center and the EB-5 investments. Chen instructed B.L. to delete emails sent between them. And then in an attempt to escape being implicated in a fraud, Ye directly participated in the deleting of relevant emails, and helped coach B.L. in responding to the SEC subpoena and testifying.

Ye's conduct is a betrayal of trust. First, regarding the conspiracy to mislead USCIS about the true nature of the control of the EB-5 entities, Ye betrayed the trust of the immigration officials and the system they administer. By participating in the false submissions, he took advantage of the USCIS reliance on truthful submissions and accurate information. As the Todd Young, Acting Chief of the USCIS Immigrant Investor Program, wrote in his letter regarding this sentencing, the EB-5 "program integrity depends in part on the responsible actions of Program participants." And, he wrote, the harm of abuse of that trust and damage to the integrity includes harm to U.S. workers who would benefit when the program participants act within the rules, and a possible loss of economic growth in the area where the funds were aimed.

Second, Ye betrayed the fair administration of justice when he obstructed the investigations into his wrongdoing. By deleting emails and destroying evidence he impaired the truth-seeking function of the investigating agencies and impaired their ability to hold him and Chen accountable for their actions.

The nature of the offense in this case, and the fact that it appears to have been driven by greed, and not necessity, warrants a custodial sentence in accordance with the applicable guidelines range.

**B.      The Need for General Deterrence and to Avoid Unwarranted Sentencing Disparities**

In cases of deceit and obstruction in general, and especially in cases such as this involving a betrayal of trust and failure to disclose the true nature of business or financial entanglements, a sentence should consider the need for general deterrence. These types of crimes can be difficult to detect and investigate, and only more so when a defendant undertakes an effort to obstruct the investigation. For this reason, on custodial sentence reflecting the seriousness of this crime, will provide both general and specific deterrence, and will discourage others in a similar position to act with the same deception.

One of the principles guides the Sentencing Commission in setting the sentencing guidelines is

the goal of "providing certainty and fairness in sentencing and reducing unwarranted sentence disparities." 28 U.S.C. § 994(f). For this reason, the Court furthers the goal of avoiding disparities by correctly calculating the offense level and guidelines range and giving the resulting range consideration and varying only when the sentencing factors of 18 U.S.C. § 3553 require it. *See United States v. Reyes-Medina*, 683 F.3d 837, 841 (7th Cir. 2012) (a sentence within a guideline range necessarily complies with 18 U.S.C. § 3553(a)(6)).

For the reasons stated above, the government recommends a sentence at the low end of the guidelines range, 12 months. This sentence would recognize the seriousness of the offense, and the harm to the integrity of the U.S. immigration system and the investigation of criminal offenses.

## IV.     CONCLUSION

The government recommends a sentence at the low end of the applicable guidelines range and requests that any variance considered by the Court be consistent with the sentencing objectives outlined in 18 U.S.C. § 3553(a) and justified by the facts and circumstances of this case and the defendant.

DATED: November 10, 2021                    Respectfully submitted,

STEPHANIE M. HINDS
Acting United States Attorney


_____/s/_____
LLOYD FARNHAM
Assistant United States Attorney