UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Susan van Keulen, Magistrate Judge

UNITED STATES OF AMERICA,   )
                           )
       Plaintiff,      )
                           )
vs.                    )  No. CR 19-00111-BLF-2
                           )
DANJONG "JEAN" CHEN,    )
                           )
       Defendant.     )
_____)

                         San Jose, California
                         Monday, March 31, 2025

<u>TRANSCRIPT OF PROCEEDINGS OF THE OFFICIAL ELECTRONIC SOUND
RECORDING 1:04 - 1:38 = 34 MINUTES</u>

<u>APPEARANCES</u>:

For Plaintiff:
                         United States Attorney's
                           Office
                         United States Department of
                           Justice
                         450 Golden Gate Avenue
                         San Francisco, California
                           94102
                    BY:  LLOYD A. FARNHAM, ESQ.

For Defendant:
                         Dechert, LLP
                         45 Fremont Street, 26th Floor
                         San Francisco, California
                           94105
                    BY:  HARTLEY WEST, ESQ.

Transcribed by:          Echo Reporting, Inc.
                         Contracted Court Reporter/
                         Transcriber
                         echoreporting@yahoo.com

                        P-R-O-C-E-E-D-I-N-G-S

                              --oOo--

          THE CLERK:  Calling Case Number 19-CR-00111-BLF,
U.S.A. versus Danjong "Jean" Chen.

      Counsel, please state your appearances, starting with
the Government first.

      (Pause to confer with the clerk.)

          THE COURT:  All right.  Appearances of counsel,
please.

          MR. FARNHAM:  Good afternoon, your Honor.  Lloyd
Farnham on behalf of the United States.

          THE COURT:  Mr. Farnham.

          MS. WEST:  And good afternoon, your Honor.
Hartley West of Dechert on behalf of the Defendant, who is
present and in custody.

          THE COURT:  Thank you, Ms. West.

          OFFICER ARELLANO:  Good afternoon, your Honor.
Yaneyla Arellano with U.S. Pretrial.

          THE COURT:  Officer Arellano, thank you for being
here.

      All right.  Ms. Chen, good afternoon.  We're on today
for your detention hearing.

      I have the Pretrial Services Report, the full report
that I think we received last week.  I also received a

1   letter brief from defense counsel.

2       Mr. Farnham, did you have an opportunity to review

3   that?

4               MR. FARNHAM:  I did, your Honor.

5               THE COURT:  Okay.  And I did not receive anything

6   further in writing from the Government, did I?

7               MR. FARNHAM:  No, your Honor.

8               THE COURT:  All right.  I think I have been

9   through all of the materials.  So, Mr. Farnham, it's your

10  motion.  Please proceed.

11              MR. FARNHAM:  Certainly, your Honor.  So, for this

12  detention motion, it's based on a risk of flight.  And, in

13  that case, the Government has to prove by a preponderance

14  that there is a risk of flight that cannot be mitigated by

15  any conditions, and we think that's the case, and I think

16  that the Court should find that there are no conditions that

17  could mitigate the risk of flight here.

18      The -- some of the most significant factors are just

19  the history of this case and the fact that Ms. Chen has been

20  a fugitive for six years now.  She's known about the

21  indictment.  She has stayed in both the -- either the

22  People's Republic of China or places where we don't have any

23  insight to.  She went to the Kyrgyz Republic likely

24  believing that she would not be apprehended and arrested

25  because there is no extradition treaty with the Kyrgyz

1   Republic.  However, they did honor the Red Notice, and I'm
2   sure Ms. Chen was surprised by that, and she was taken into
3   custody, and that's why she's here today.  But the fact that
4   she has spent six years on the run, essentially evading the
5   justice and the -- and the charges in this case, knowing
6   that they're out there, they have been public, I think is
7   the most overriding factor that shows she is, in fact, a
8   risk of flight because she, in fact, fled these charges.

9        Also of note is that there is an SEC case pending
10  against her that she has been litigating and, yet, also
11  refusing to come to the United States to appear for
12  deposition, which it's a civil case, a federal civil case,
13  and the SEC has a right to seek her -- her deposition in
14  that case.  She's a Defendant, and she has refused to come
15  appear for that, even though Judge Beeler, who is presiding
16  over that case, did order that she appear for deposition.  I
17  think that's further proof that if she -- well, let's put it
18  this way, that the reason she was staying out of the United
19  States is to avoid being arrested and face the charges in
20  this case.

21       There -- some other -- some other things that I want to
22  address.  The Pretrial Services Report concludes, and I
23  agree with, that there are no conditions that would ensure
24  her further appearance in this case and prevent her from
25  fleeing the jurisdiction again.

1    Noting the obvious, if she were to go back to The

2  People's Republic of China, where she has lived for six

3  years apparently, there would be no way for the United

4  States to secure her appearance again, and that's really the

5  risk that we're trying to prevent here.

6    She clearly has no ties here that were not worth

7  leaving behind because she apparently permanently, it seems,

8  moved her residence to China.

9    Interesting things in the Pretrial Services Report

10  based in part on their interview with Ms. Chen, her finances

11  seem incredibly murky, and there are a lot of questions

12  about that.  One of the things of note is that she

13  apparently gets from her -- there is 50 to 70 thousand

14  dollars a month transferred into an account she has here to

15  allow her to pay mortgage and maybe other costs associated

16  with the house in Atherton.  But Ms. Chen does not say that

17  she has any other assets other than a $50,000 retirement

18  account in that IRA.

19    The murkiness of her assets I think two things.  One,

20  it doesn't give this Court insight into what her actual

21  financial situation is and what type of secured bond would

22  secure her -- her appearance, because apparently she has

23  access to significant amounts of assets, likely in China,

24  because every month, a significant amount of money is

25  transferred to an account she owns here to pay for the

1  mortgage on that house.

2      So, I think that murkiness makes it impossible for the

3  Court to fashion any conditions based on security that would

4  ensure her -- her appearance.

5      There are some issues about her -- her medical issues,

6  and I'll -- I'm happy to address any that the Court thinks

7  are significant or that I should talk about.  One thing of

8  note is that while she's been in custody in Elmwood, she has

9  received medical attention, including an X-ray of her knee,

10 an X-ray of her back.  She's been seen by doctors multiple

11 times.  And, to the extent that she -- there's any care

12 required for her knee, which it doesn't seem from any of the

13 -- the Elmwood medical reports, the recent medical reports

14 from this country, that there's anything urgent about that.

15 The knee's healed.  It will require surgery to remove the

16 screws at some point, but there's nothing urgent about that

17 according to the medical reports and medical records that

18 were submitted by the Defense.

19      In fact, when the medical staff at Elmwood said to Ms.

20 Chen, "We can -- we can have you see a surgeon in order to

21 consult about that knee," she said, "No, not right now,"

22 because she's afraid that it would delay her release or

23 transfer.  So, at this point, her medical condition that she

24 has cited as a reason to the SEC why she couldn't travel to

25 the United States, cited as a reason in the Kyrgyz Republic

why she couldn't travel, and now cites as a reason why she

should be released, she is actually declining to get further

care for that, and I think that's a significant point.

One of the examples that the Defense points to for the

type of conditions that they are proposing here is the

Michael Lynch case.  I want to point out a couple of

significant differences in that case to this case.

First of all, when Mr. Lynch -- so, Mr. Lynch did, in

fact, fight extradition, but he did it while he was on bail

in the UK, and when the extradition proceedings were over,

he voluntarily appeared in order to be transported by the

Marshals to the United States.  So, he was on bail in the UK

and -- and had been released already.  And, so, that was a

factor that was significant about this condition -- related

to his conditions when he got here.  In fact, that trust in

Mr. Lynch's ability or -- or inclination to turn himself in

and to face justice is why the Government, when he actually

got here, had agreed on conditions that included a sizable

bail but not the 24-hour security guards.  It was Judge

Breyer that imposed those conditions even though the

Government had agreed that there were some conditions that

would apply here.

So, that's -- those are the two main differences.  Mr.

Lynch was on bail in the UK when he came here.  And, so, I

think that there's a strong presumption that there were some

1  conditions that could secure his further appearance.

2       Two is the government had already agreed in that case

3  that there were some conditions that would secure his

4  appearance, and Judge Breyer just imposed the more strict

5  ones.

6       I think this case is completely different.  Ms. Chen

7  was apprehended only because she had traveled to a country

8  where she didn't think she would be arrested, and she was --

9  and she fought detention from in -- in custody, and the

10 Government has no trust or belief that if she had the

11 opportunity she wouldn't take it to flee the jurisdiction

12 again.

13      There are other -- so, while there are other instances

14 of this type of sort of strict 24-hour security guard bail

15 conditions, there are also examples of courts rejecting it.

16 The -- in the Eastern District of New York, there was a case

17 where a defendant proposed that, and both the Magistrate

18 Judge and the District Court rejected it, and that was <u>U.S.</u>

19 <u>v. Boustani</u>, B-O-U-S-T-A-N-I, 356 F.Supp.3d, 246.

20      The other -- one of the other cases cited by the

21 Defense is <u>Zang Li</u> (phonetic), which is a case out of this

22 District.  That actually was -- he was -- he had been

23 released in the UK on those strict conditions.  So, that was

24 while he was awaiting extradition.  The UK court had

25 released him on those -- on those type of security

1 conditions, 24-hour-security conditions.  He was not

2 released in this District on those conditions.  When he got

3 here, there had already been a disposition.  And, so, that

4 was not an issue.  So, I think the cases that are cited by

5 the Defense are distinguishable and significantly different

6 than the case we have here.

7         With that, I'll submit.  And if there -- and if there's

8 anything to respond to on the Defense points, I'd like the

9 opportunity to do that.

10          THE COURT:  Thank you, Mr. Farnham.

11      Ms. West --

12          MS. WEST:  Thank you, your Honor.

13          THE COURT:  -- I did read the letter.  So, I think

14 I'm up to speed, but --

15          MS. WEST:  Thank you, your Honor.  I appreciate

16 that.

17      I think one of the biggest differences between this

18 case with Ms. Chen and the cases that were -- the Zang

19 matter and the Lynch matter is that, unlike those

20 Defendants, Ms. Chen is a United States citizen.  She does

21 have substantial ties to the United States, to the Bay Area

22 in particular.  She is somebody who, as we have said in our

23 papers, did not flee when there was an indictment pending.

24 She was already outside of the jurisdiction long before --

25 months before any charges were filed criminally in this

1  case.

2       THE COURT:  Well, so, that timing is not -- not
3  that clear because the complaint in this case was filed in
4  November of 2018, and the indictment followed a few months
5  later, but the complaint was filed in which Ms. Chen was
6  named, and then I think the proposed ski trip with her
7  husband and daughter, which I recall clearly because that
8  was an appearance before me, was in November of 2018.

9       MS. WEST:  That's correct, your Honor.

10      THE COURT:  And I think it is reasonable to infer
11  that at that time, Ms. Chen was well aware of the pending
12  charges, not -- not yet at indictment level but of the
13  criminal complaint.

14      MS. WEST:  Well, I think that's a great example,
15  your Honor, because Ms. Chen did travel to Canada, a country
16  obviously with which there is an extradition treaty with the
17  United States knowing about those potential charges, to meet
18  her -- her daughter and the daughter's father for a ski trip
19  as they had done in prior years.  So, she wasn't just
20  remaining in a country where there's no extradition because
21  she was aware of the charges.  She was, in fact, going to
22  meet them in Canada.  She did travel to Canada for that
23  purpose.  So, I -- I actually see -- your Honor, I seeing
24  that playing in the other direction.  She was not hiding in
25  a country with no MLAT with the U.S.

1          THE COURT:  She did travel extensively after that

2   across the globe, and it -- I don't see any references to

3   destinations where she'd be subject to extradition by the

4   United States, but she was clearly -- she was traveling for

5   business over the last six years and residing in China as I

6   understand it.

7          MS. WEST:  She had actually a little bit of travel

8   outside of China.  Well, COVID lockdown was for a

9   significant portion of that time.  She did have some travel

10  outside of China before Kyrgyzstan in which, by the way, she

11  used a passport with her true name.  She flew through

12  Germany, which has an extradition treaty.  She flew to

13  Grenada.  So, there were travels that she was connecting

14  under her true name with the U.S. Passport, and to me,

15  actually, that does, in fact, cut the other direction, which

16  this was not a matter of trying to hide away in China this

17  entire time.

18      The -- the travel in Kyrgyzstan was for business

19  purposes, as was the -- the Germany, Grenada one as well.

20  But I think the key point that I would bring the Court back

21  to is that the proposal we are making where I think that

22  it's the most secure the Court could, with armed security

23  guards, 24/7, the -- I personally have spoken to the

24  security guard company.  They are former military.  They are

25  former FBI.  They're former law enforcement.  They would be

1  -- it would be simply a jail of her own creation that she

2  would be locked down in.  In addition to the conditions

3  imposed by Judge Breyer on Mr. Lynch, we would throw in the

4  added condition, just belt and suspenders wherever we can

5  find it, of electronic monitoring, notwithstanding the pain

6  that it would cause her leg to have the ankle bracelet on,

7  because we're trying to put together the most airtight

8  package for the Court that we can, your Honor.  So, that

9  even exceeds the conditions that were imposed by Judge

10 Breyer where I'm sure your Honor looked at Judge Breyer's

11 order.  I mean, he started that order saying:

12          "Of course, there's every incentive

13          to flee here.  The co-conspirator

14          pled" --

15          THE COURT:  I read the order, and I read the

16 contract.

17          MS. WEST:  Yeah.  Yes.

18          THE COURT:  And I think that it is a significant

19 distinguishing factor that the Defendant in this case has

20 stayed away for six years with charges pending, and that is

21 very different from Mr. Lynch or the Li case or the SDNY

22 cases which -- where extradition wasn't -- wasn't even an

23 issue.

24          MS. WEST:  Well, as your Honor knows because I

25 know you did read our papers carefully, the reason that she

was remaining in China was to care for her mother.  In fact,
it's undisputed that there was significant care that needed
to be provided to her there, and then moving into lockdown,
coming out of lockdown, having applied for an exit visa, Ms.
Chen then broke her knee.  She was under -- well, she had a
lot of medical care associated with that, notwithstanding
that she was not able to -- not able to travel for more than
three hours due to the elevation, and I -- I think I
included in our papers the fact Ms. Chen's father died from
a blood clot, and the risk of blood clots increases with
elevation and so forth.  So, she was adhering very carefully
to that so that she could try to do her business travel by
first train and then a flight that was less than a three-
hour period.

So, there are very serious reasons why Ms. Chen was not
traveling beyond that.  In order to see her daughter, she
had traveled to Canada, as your Honor was aware and we
discussed.  Her daughter then was able to fortunately go and
see her in China when Ms. Chen was just not able to travel.

So, the -- the flight having -- excuse me -- having
been before the criminal case and charges were filed -- as
your Honor recognized, it was November when she departed the
United States in October -- excuse me.  And -- and then,
beyond that -- excuse me.  I lost my train of thought.
Having -- having departed in October, before the charges for

1   reference in the complaint in November, she did continue to

2   litigate throughout this entire time her SEC case.  So, it

3   wasn't just a matter of evading it and -- and ducking her

4   head and -- and hoping that it didn't come up.  She had been

5   litigating that through counsel.  In fact, I think it -- it

6   is worth mentioning, I've -- in my discussions with Mr.

7   Farnham, I understand that Mr. Farnham had sought to reach

8   out to prior criminal counsel for Ms. Chen who -- but didn't

9   hear anything back, had received some communications from

10  her SEC attorney but because he was representing on the SEC

11  case, did not touch base.

12      I have spoken with prior defense counsel, and he does

13  not recall having received messages from Mr. Farnham, but

14  there were efforts through counsel to actually have

15  negotiations with Mr. Farnham at the beginning of the period

16  when Ms. Chen was apprehended in Kyrgyzstan.  So, it wasn't

17  a matter of just no communication and fighting.  In fact, if

18  we had the Kyrgyzstan file, what we'll see I understand is

19  that for the first three months, there was no effort to --

20  to fight the extradition.  In fact, there were

21  communications with counsel in Kyrgyzstan who had advised

22  Ms. Chen that they -- the authorities in Kyrgyzstan were

23  hoping to have an exchange for Ms. Chen and, therefore, she

24  would not be able to return voluntarily.  Only after that

25  when their -- her medical condition was worsening and her

1 pain in her knee was worsening did Ms. Chen seek to have

2 medical treatment then in China.

3       THE COURT:  She did contest extradition to the

4 United States from Kyrgyzstan.

5       MS. WEST:  She did ultimately, that's correct,

6 your Honor.

7       THE COURT:  Yes.  Okay.  Anything further?

8       MS. WEST:  I think the additional point that I

9 would raise, your Honor, is I believe we have some -- a

10 couple of people who are here in the courtroom who have ties

11 to Ms. Chen and would like to attest to her -- her community

12 and involvement, and their presence here supports that.  We

13 have Chadborn Kromhurst (phonetic) and Mi Li (phonetic),

14 both of whom have been members of the community and are here

15 to support Ms. Chen.

16       THE COURT:  And I appreciate that and thank you

17 for being here, but neither of those persons are offered as

18 custodian or sureties, correct?

19       MS. WEST:  They are not, your Honor.

20       THE COURT:  Okay.

21       MS. WEST:  We believe that the security guard

22 would provide an even greater deterrent and conclusively

23 prevent any risk of flight.

24       THE COURT:  I want to return to one point that --

25 picking up on a point that the Government raised with regard

1  to the status of finances, and one of the conditions that's

2  proposed was there's a reference to the deed of the home in

3  Atherton.  But, as I understand from your submission, Ms. --

4  Ms. Chen only has a 50 percent in that home.

5          MS. WEST:  That's correct.  The Trustee would --

6  would also sign off on the remaining 50 percent.

7          THE COURT:  Okay.  And where is that person

8  located?

9          MS. WEST:  In the Bay Area.

10         THE COURT:  Okay.  All right.  Are you done, Ms.

11  West?

12         MS. WEST:  I am.  Thank you, your Honor.

13         THE COURT:  Thank you.

14     Was there anything further from Pretrial Services?  I

15  obviously read the report.  Anything beyond that?  Any

16  additional information?

17         OFFICER ARELLANO:  No, your Honor.

18         THE COURT:  Thank you.

19     Mr. Farnham, final comments?  It's your motion.

20         MR. FARNHAM:  On the house as a potential security

21  for the -- for the bond, a couple of points that are

22  important there, your Honor.  One is that the SEC complaint

23  actually alleges that the house was purchased with proceeds

24  of the fraud that's alleged in the SEC complaint, and they

25  actually sued as relief defendants, the half owners that --

1 excuse me -- the Trustees of the trust that is the half

2 owner.  It's the Chenye Trust, one word, C-H-E-N-Y-E, that

3 the -- and I believe it was May of 2018 that half the house

4 was transferred without any -- without any consideration.

5 And, so, one is that transfer is suspicious to the SEC.  It

6 looks like a effort to shield assets.

7      Two is the entire house proceeds are subject to the SEC

8 litigation.  And, so, from the Government's perspective,

9 that house would be an inappropriate means to secure the

10 bond because it is subject at least in part to be determined

11 by Judge Beeler and any judgment later to an SEC judgment.

12      And, so, it seems in particular an inappropriate

13 vehicle to secure a bond when its ownership and any other

14 liens or legal claims on it are unknown.

15      I want to -- I want to just make clear the timeline

16 quickly.  I think it -- I think it is in favor of the

17 Government, but I just want to clarify the facts here.  So,

18 Ms. Chen -- in the timeline, Ms. Chen left the country the

19 day after the SEC's civil complaint was filed.  So, it was

20 public on October 18th.  Of course, the investigation had

21 been -- had been known to Ms. Chen long before that.  The

22 October 18th, 2019 -- excuse me -- 2018 civil complaint that

23 the SEC files -- filed alleged some of the obstructive

24 conduct that the Government later charged her with.

25      The -- and then on October 19th, she leaves the

country.  We had always believed by train.  I -- I had only
heard -- I had heard by train from Seattle to Vancouver.
The Defendant's letter says that it was by bus, which, of
course, is a little bit even more suspicious because that
may be a way that you try to evade any of the checks that
might be waiting for you as you leave the country.  To me,
changing to a bus at the last minute to cross the Canadian
border looks like you're trying to flee.

And then it was November 20th, as your Honor points
out, that the criminal complaint was unsealed soon after --
it was unsealed soon after Mr. Ye's arrest at the airport in
San Francisco.

The -- the only international travel that I -- that I
see in her passport and that I'm aware of after October 2018
is a few trip -- there's a trip to Europe I believe in early
2019.  So, past that, so past March when the indictment was
filed, 2019, March 2019, when the indictment was filed and
public, I didn't see any international travel to a place
where it was obvious that Ms. Chen would know she might get
arrested and extradited.  So, I just wanted to make that
point.

THE COURT:  Um-hmm.

MR. FARNHAM:  I think that part of the timeline is
consistent with the Government's view that once the
indictment was filed, she was careful not to go to a place

1 where she thought that she would face extradition on the

2 charges.

3      With that, unless your Honor has any questions, I'll

4 submit.  Thank you.

5           THE COURT:  Thank you.

6      All right.  As I've said, I've given this very careful

7 consideration and have looked at all of the submissions from

8 Pretrial Services and counsel as well as the -- the cases

9 that were cited by defense counsel in support of what are

10 obviously very stringent release conditions.

11      In this case, the Government's burden is to demonstrate

12 by a preponderance of the evidence that the Defendant

13 presents a risk of flight that cannot be mitigated by

14 conditions, and I find in this case that the Government has

15 carried that burden, and some of the reasons in support of

16 that are, first and foremost, Defendant's fugitive status

17 for a period of over six years where we have the indictment,

18 if we want to take that date, but the facts demonstrate that

19 she was aware of the criminal charges in advance of that.

20 She left the country following the civil complaint.  The

21 criminal complaint followed shortly thereafter and the

22 indictment within a couple of months.

23      Then, again, Ms. Chen remained and stayed out of reach

24 of the United States for a significant period of time.  So,

25 we have a fugitive status that weighs a number of years.

1  Even allowing for COVID shutdown, it is still a significant
2  number of years.  Clearly, she has the means and the
3  contacts to live abroad.  I understand from her interview
4  with Pretrial Services that she says she has been living in
5  China during this time, and it is also demonstrated in the
6  papers that she has access to a significant and steady
7  amount of funds.  Whether they come monthly or as an account
8  is depleted is of no import, but she gets tens of thousands
9  of dollars on a regular basis from what appears to be a
10 relative in China.  At least that's the -- excuse me -- the
11 representation in the Pretrial Services Report and in the
12 Defense letter.
13      There's also a home here.  Ownership, again, not clear
14 other than a statement that Ms. Chen has a half ownership.
15 It has a retail value of $10 million.  There are clearly
16 encumbrances on that, but, again, it demonstrates a
17 likelihood of access to sufficient funds to abscond again.
18      So, we have means.  We have a demonstration of a desire
19 and preference to evade the criminal charges, again, over a
20 significant period of time.
21      Given all of these conditions, I don't find all of
22 these factors -- I don't find even the conditions proposed
23 by the Court to be -- or, excuse me -- proposed by the
24 Defense to be sufficient to ensure that there would not be
25 risk of flight.  The Defendant previously left her family,

left her home, went abroad, stayed abroad, and I just don't
see any ties or technology that would keep her here that she
would not be able to -- to circumvent.

I'm going to summarize my findings in a short order,
and either side may appeal to the District Judge presiding
over this case.

MS. WEST:  Thank you, your Honor.  One additional
thing if I could.  I -- I know Ms. Chen will want me to make
sure that the Court understands that she does feel that she
needs immediate surgery -- surgery for her knee.  It was her
understanding from the providing medical professionals
affiliated through the jail that the earliest they would be
able to do that for her, which was not guaranteed, would be
four months, and by having her be released under these very
strict conditions, she would be able to have that treatment
sooner.

THE COURT:  Well, that's not what the letter says.
What the letter says is is the soonest she can be scheduled
is four months.  That's a significant amount of time away,
and there are -- she is getting medical attention in -- in
detention at this time, and if she needs leave of custody
for surgery, then you can take that up with the District
Judge, and she'll probably send you back here if she finds
that that's appropriate.

I also want to note, though, I did get a note from my

1  clerk that we need a plea entered in this case.  Does that

2  sound --

3          MS. WEST:  That does sound --

4          THE COURT:  -- right --

5          MS. WEST:  -- right, your Honor.

6          THE COURT:  -- according to the paperwork?

7     Ms. West, do you waive a formal reading of the charges

8  at this time?

9          MS. WEST:  We do.

10          THE COURT:  Okay.  I don't have a charging

11  document in front of me.  Do you have that, Mr. Farnham?

12          MR. FARNHAM:  I do, your Honor.

13          THE COURT:  Would you read the charge and the

14  associated penalties, please -- charges and associated

15  penalties?

16          MR. FARNHAM:  And, I'm sorry, your Honor.  Did you

17  want me to read the charges and the penalties in --

18          THE COURT:  Yes.

19          MR. FARNHAM:  Okay.  Thank you.

20          THE COURT:  Yes.  And you can do the summary form

21  of the charges just off the charging sheet.

22          MR. FARNHAM:  Certainly.  And I believe she had --

23  she had been advised of the charges on the first day, but --

24          THE COURT:  Yes.

25          MR. FARNHAM:  -- no plea was entered.  So --

1      THE COURT:  That's right.

2      MR. FARNHAM:  That's correct.

3      Ms. Chen is charged with 10 counts of visa fraud, in

4  violation of Title 18 United States Code, Section 1546(a).

5  She's also charged with one count of obstruction of justice,

6  Title 18 United States Code, Section 1512(b)(3) -- I'm

7  sorry.  For the visa fraud, the maximum penalties are 10

8  years in prison, $250,000 fine, three years of supervised

9  release, and a $100 special assessment.

10      For the obstruction of justice, Section 1512(b)(3), the

11  maximum imprisonment is 20 years, $250,000 fine, three years

12  of supervised release, and a $100 special assessment.

13      She's charged with obstruction of justice, in violation

14  of Title 18, Section 1505, with a maximum penalty of five

15  years in prison, $250,000 fine, three years of supervised

16  release, and a $100 special assessment.

17      She's also charged with one count of aggravated

18  identity theft, Title 18 United States Code, Section

19  1028(a), maximum penalty of -- well, excuse me -- a

20  mandatory minimum penalty of two years in prison, $250,000

21  fine, one year of supervised release, and a $100 special

22  assessment.

23      THE COURT:  Thank you.

24      And do we have a plea today, Ms. West?

25      MS. WEST:  Not guilty as to all counts.

1          THE COURT:  Okay.

2          MS. WEST:  Thank you, your Honor.

3          THE COURT:  Not guilty plea is entered.  Thank

4 you.

5      Anything further for the Court today, Mr. Farnham?

6          MR. FARNHAM:  So, I think it is appropriate now to

7 set a date before the District Judge, which we don't have

8 yet.

9          THE COURT:  And did you all discuss a date?

10     (Pause.)

11         MR. FARNHAM:  We -- we would request about six

12 weeks out.

13         THE COURT:  Okay.

14         MR. FARNHAM:  If her calendar -- whenever her

15 calender is --

16         THE COURT:  Judge Freeman's availability, Ms.

17 Bererra?

18         THE CLERK:  That would be -- we have May 20th, May

19 27th, June 3rd and 10th.

20         MR. FARNHAM:  If I could have one moment, your

21 Honor?

22         THE COURT:  Um-hmm.

23     (Pause.)

24         MR. FARNHAM:  I would request June 3rd.

25         THE COURT:  Ms. West?

1   MS. WEST:  That should work fine.  Thank you, your

2 Honor.

3   THE COURT:  Okay.  Next appearance will be in

4 front of Judge Freeman on June 3rd, 9:00 a.m., upstairs.

5   MR. FARNHAM:  Thank you, your Honor.  So, the

6 Government will be producing discovery, and defense counsel

7 will undoubtedly need to review that.  It is extensive.  It

8 is -- it is voluminous discovery in this case.  We would ask

9 that time be excluded under the Speedy Trial Act until our

10 appearance before Judge Freeman on June 3rd.

11   THE COURT:  Ms. West, do you join in that request?

12   MS. WEST:  We do.  Thank you, your Honor.

13   THE COURT:  All right.  Ms. Chen, counsel have

14 joined in a request that time be waived pursuant to the

15 Speedy Trial Act under which you're entitled to trial within

16 70 days from the date of arraignment, which is today.  And

17 counsel have referenced the voluminous discovery in this

18 case, and to allow for the effective preparation of counsel,

19 I'm going to grant that request, and time will be waived

20 between the next court appearance on June 3rd.

21   Anything further?  Mr. Farnham?

22   MR. FARNHAM:  Nothing from the Government.

23   THE COURT:  Ms. West?

24   MS. WEST:  No.  Thank you, your Honor.

25   THE COURT:  Okay.  Thank you very much.  That

1  concludes this matter.  The Defendant is remanded to the

2  custody of the U.S. Marshals pending further proceedings.

3       (Proceedings adjourned at 1:38 p.m.)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    <u>CERTIFICATE OF TRANSCRIBER</u>

2

3        I certify that the foregoing is a true and correct

4   transcript, to the best of my ability, of the above pages of

5   the official electronic sound recording provided to me by

6   the U.S. District Court, Northern District of California, of

7   the proceedings taken on the date and time previously stated

8   in the above matter.

9        I further certify that I am neither counsel for,

10  related to, nor employed by any of the parties to the action

11  in which this hearing was taken; and, further, that I am not

12  financially nor otherwise interested in the outcome of the

13  action.

14

15

16              Echo Reporting, Inc., Transcriber

17                  Friday, April 4, 2025

18

19

20

21

22

23

24

25